UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

In re:                                      )
                                            )
**DAVID ALLEN KUBECZKO,**                   ) Case No. 12-13766 HRT
                                            )
Debtor.                                     ) Chapter 13
                                            )

### ORDER ON CONFIRMATION OF DEBTOR'S PLAN

      This case comes before the Court on Debtor's *Chapter 13 Plan* dated March 2, 2012, (docket #2) (the "Plan") and the Chapter 13 Trustee's *Objection to Confirmation of Chapter 13 Plan* (docket #13).

      The Court has considered the parties briefs and oral arguments presented at the hearing conducted on June 21, 2012, and is ready to rule.

      The Trustee objects to the Debtor's treatment of his education loan debt as a long-term debt under 11 U.S.C. § 1325(b)(5) on the basis that the Debtor's separate classification of his education loan debt unfairly discriminates against other creditors and, thereby, violates 11 U.S.C. § 1325(b)(1).

### I. FACTUAL BACKGROUND

      As of the hearing date the Court's claims register reflects total unsecured claims in the amount of $154,833.09.[1]  Included in that total is a proof of claim in the amount of $28,809.44 filed on account of four education loans that Debtor took out to aid a child's education. Debtor's budget schedules show that he intends to continue making his normal monthly payments totaling $375.00 per month directly to the education loan creditor outside of his Plan.  In addition, the Debtor's Plan provides that the education loan claim will share the Class IV pro-rata distribution to general unsecured creditors.  The effect of the Debtor providing in his budget to continue making his regular monthly payments to the education loan creditor is to treat his education loan debt as a long-term debt under 11 U.S.C. § 1322(b)(5).  At hearing, Debtor's counsel acknowledged that, as currently written, the Debtor's Plan provides double payment to the education loan creditor and he agreed to revise the Plan to treat the education loan solely as a long-term debt under § 1322(b)(5).  By removing the education loans from Class IV, Debtor's remaining unsecured claims – amounting to $126,023.65 – would be paid pro-rata out of the Debtor's Plan payments of $153.00 per month after the payment of priority claims and

---

[1] Claim amounts recited herein are subject to revision as the proof of claim deadlines had not yet expired as of the hearing date.  The general creditor deadline is July 16, 2012, and the deadline for governmental units is August 29, 2012.

ORDER ON CONFIRMATION OF DEBTOR'S PLAN
Case No. 12-13766 HRT

administrative expenses. The estimates appearing in Debtor's Plan reflect total payments to general unsecured creditors of $457.00 but that total would be reduced by payment of a $121.02 priority tax debt that is not accounted for in those estimates.

Based on claims on file as of the hearing date, the Court estimates that, over the life of the Debtor's 36 month Plan, $13,500.00 would be paid to the creditor on the nondischargeable education loans – a dividend of 46.86% of the education loan claim. By contrast, Debtor's Plan would pay a 0.27% dividend to the remaining general unsecured creditors. If the education loans were not separately classified and the $13,500.00 earmarked to pay those claims – less the chapter 13 trustee fee – were added to the amount going to general unsecured creditors, the dividend for all unsecured creditors would be approximately 8.06%. That represents a nearly 30-fold increase in the dividend to general unsecured creditors. To put it another way, the separate classification and treatment of the education loan debt results in a 97% reduction in the dividend to general unsecured creditors.

## II. DISCUSSION

A. <u>11 U.S.C. § 1322(b)(5) and 11 U.S.C. § 1322(b)(1).</u>

The initial question is whether § 1322(b)(1)'s prohibition against unfair discrimination applies to payments made under § 1322(b)(5) and, if so, whether the Debtor's proposed treatment of his education loan debt does unfairly discriminate against the non-education loan unsecured creditors.

The Court holds that classification of an unsecured debt as a long-term obligation and treatment of that obligation under § 1322(b)(5) is subject to the test for substantial fairness reflected in § 1322(b)(1).

Section 1322(b)(1) provides that:

> Subject to subsections (a) and (c) of this section, the plan may . . . designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims[.]

11 U.S.C. § 1322(b)(1).

The relevant portion of § 1122 referenced in the language of § 1322(b)(1) is simply the provision that allows a chapter 11 debtor to separately classify claims that are substantially similar to one another. Neither the remainder of § 1122 nor the references to subsections (a) and (c) of § 1322 are germane to the present issue. Even though the Debtor incurred the education

Page 2 of 10

ORDER ON CONFIRMATION OF DEBTOR'S PLAN
Case No. 12-13766 HRT

debt in order to assist a child with education expenses, there is no joint liability on the debt so the last clause of § 1322(b)(1) is inapplicable in this case also.

The effect of § 1322(b)(1) is nothing more or less that what appears on the face of the provision. It clearly recognizes that whenever unsecured claims are placed in separate classes, the treatment of the claims in one class will necessarily be different from the treatment of claims in another. In recognition of that fact, it does not require equality of treatment but it does require that such separate classification not result in unfair treatment of one class of creditors as opposed to another.

Courts have struggled somewhat with the meaning of unfair discrimination reflected in § 1322(b)(1). In an early case under the Bankruptcy Code, Judge Pusateri concluded "somewhere between total whim and an Act of God lies the answer to what justification is needed to hew out a particular class of unsecured creditors and distinguish it from other unsecured creditors." *In re Hill*, 4 B.R. 694, 698 (Bankr. D. Kan. 1980). Subsequent cases have developed various tests for fairness. The four part *Wolff / Leser* test is typical:

> Lacking more explicit direction from Congress, courts have developed a four-part test to determine whether a proposed separate classification of unsecured claims is fair by inquiring: (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

*In re Leser*, 939 F.2d 669, 672 (8th Cir. 1991) (citing *In re Wolff*, 22 B.R. 510, 512 (B.A.P. 9th Cir. 1982)). In the end, courts must decide this issue on a case by case basis. The facts of this case do not require in-depth analysis of any of the various tests. The degree of discrimination between treatment of general unsecured creditors and the separately classified education creditor in this case is too great to be offset by consideration of other factors. This is not a case where the inability to discriminate between the treatment of the education loan creditor and other unsecured creditors deprives the Debtor of the ability to reorganize under chapter 13. By classifying the education claim as a general unsecured claim and paying the same total into his Plan, the Debtor would still discharge over $100,000.00 of unsecured debts even though he would necessarily default on the education debt and substantial interest would accrue on that nondischargeable debt over the life of the plan. Under the facts of this case, the Court holds that the difference between a 47% dividend and a dividend of less than 1% results in unfair discrimination as that term is used in § 1322(b)(1). The only real question is whether § 1322(b)(1) applies to the treatment of long-term debts under § 1322(b)(5).

Section 1322(b)(5) provides a treatment for debts with a term that extends beyond the life of a debtor's plan:

ORDER ON CONFIRMATION OF DEBTOR'S PLAN
Case No. 12-13766 HRT

> Subject to subsections (a) and (c) of this section, the plan
> may . . . notwithstanding paragraph (2) of this subsection, provide for the curing
> of any default within a reasonable time and maintenance of payments while the
> case is pending on any unsecured claim or secured claim on which the last
> payment is due after the date on which the final payment under the plan is due[.]

11 U.S.C. § 1322(b)(5).

Because the last payment on the Debtor's unsecured education loan debt extends beyond the three year term of the Debtor's Plan, his treatment of the education loan creditor constitutes a classification of the education loan debt as a long-term debt under § 1322(b)(5). Presumably, there is no arrearage on the Debtor's education loan debt because his Plan reflects no cure payments. Debtor's budget reflects that he will pay $375.00 per month, outside of the Plan, to the education loan creditor.

Judge Shapiro, in the case of *In re Edmonds*, 444 B.R. 898 (Bankr. E.D. Wis. 2010), asserts that "[t]he majority of courts who have decided this issue . . . hold that §§ 1322(b)(1) and 1322(b)(5) must be read in conjunction with one another." *Id*. at 900. The effect of doing so, of course, is that § 1322(b)(1) serves as a limitation on treatment of long-term unsecured debts under § 1322(b)(5). But Judge Shapiro also observes that "bankruptcy courts are sharply divided," *id*., and that "[t]here is . . . a respectable body of legal precedent for the minority view on this issue . . . ." *Id*. at 901. For example, the court in *In re Hanson*, 310 B.R. 131 (Bankr. W.D. Wis. 2004), reasoned that "'11 U.S.C. § 1322(b)(5) would be rendered largely ineffective with respect to unsecured debt if student loans could not be treated thereunder . . .' So, where it applies, 11 U.S.C. § 1322(b)(5) trumps 11 U.S.C. § 1322(b)(1)." *Id*. at 134 (quoting *In re Benner*, 156 B.R. 631, 633-34 (Bankr. D. Minn. 1993)).

In finding that § 1322(b)(5) trumps § 1322(b)(1) the *Hanson* court relied on the principle that, where two sections in the same statute are in conflict with one another, the provisions of the more specific section will prevail over the more general section. *Hanson*, 310 B.R. at 133-34. But, it is the Court's primary duty to construe different provisions of the Bankruptcy Code in harmony with one another and not in contradiction. *Emples. of the Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 290 (1973) (It is a "basic canon of statutory construction that different provisions of the same statute normally should be construed consistently with one another."). *See, also, D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208 (1932) (It is a "cardinal rule that, if possible, effect shall be given to every clause and part of a statute.").

It is only necessary to resort to a tool of statutory construction that emphasizes a specific provision over a general one when there is a conflict between the two. *National Cable & Telecommunications Ass'n, Inc. v. Gulf Power Co.*, 534 U.S. 327, 335-36 (2002) ("It is true that specific statutory language should control more general language when there is a conflict

ORDER ON CONFIRMATION OF DEBTOR'S PLAN
Case No. 12-13766 HRT

between the two."); *U.S. v. Castro-Rocha*, 323 F.3d 846, 851 (10th Cir. 2003) ("[A] fundamental canon of statutory interpretation holds that, when there is an apparent conflict between a specific provision and a more general one, the more specific one governs . . ..").

Recognizing that § 1322(b)(1) imposes a limitation on a debtor's treatment of long-term unsecured debt under § 1322(b)(5) – especially a nondischargeable debt like the education debt at issue here – has serious consequences and, in some cases, may force a debtor to make very difficult choices. The ability to prefer the education loan creditor's claim over dischargeable unsecured claims would be an advantage to many debtors. Without that ability, many will emerge from a chapter 13 plan owing more to the education creditor at the end of the plan than at the beginning and will have to deal with that increased nondischargeable debt following the bankruptcy case. But finding that one provision of a statute places a limitation on the operation of another provision cannot be the standard for finding the two provisions conflict with one another. A court must respect the legislative will and the threshold for finding that different sections of a statute conflict with one another is a high one.[2] So long as a debtor can fully comply with both subsections – even if that compliance is burdensome – a court should rarely find a conflict.

Moreover, § 1322(b)(1) provides the solution for those cases where the burden is extreme. By its terms, § 1322(b)(1) allows separate classification of unsecured claims and the disparity of treatment that separate classification implies. When a case arises where a debtor believes he must create more than one class of unsecured creditors in his chapter 13 plan, in making a fairness determination under § 1322(b)(1), a court must surely balance the hardship suffered by the creditor class that is discriminated against with the harm suffered by the debtor if the court should disallow the discriminatory treatment. Given a straightforward reading of the statutory language, that appears to be exactly how §§ 1322(b)(1) and 1322(b)(5) are intended to interact rather than a situation that requires a court to find a conflict between the two provisions of the law.

Here, the two provisions may be read in conjunction with one another without creating the type of conflict that could justify the Court in disregarding § 1322(b)(1)'s limiting language. In this context, § 1322(b)(1) does nothing more than place a fairness limitation upon the classification and treatment of long-term unsecured debts as it does with all other forms of separate classification of unsecured debts. Giving effect to both §§ 1322(b)(1) and (b)(5) does not suggest an unworkable and conflicting legislative choice. In fact, to disregard § 1322(b)(1) when a debt is classified and treated under § 1322(b)(5) would suggest an unspoken Congressional intent to abandon its fairness requirement with respect to the separate

---

[2] That is especially true where, as here, the relevant portions of the two subsections at issue were enacted at the same time as part of the same statutory section in the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, § 1322, 92 Stat. 2549 (1978).

ORDER ON CONFIRMATION OF DEBTOR'S PLAN
Case No. 12-13766 HRT

classification of unsecured long-term debts but to apply the fairness requirement with respect to all other modes of separate classification of unsecured debts. That reading is far less defensible than a reading that assumes Congress intended to apply the same fairness requirements to the separate classification of all unsecured debts.

As noted above, the Court need not engage in a searching analysis to conclude that creditors who receive a less than 1% dividend on their claims have been unfairly discriminated against when compared to a creditor who receives a 47% dividend. Consequently, the Court finds that the Debtor's Plan may not be confirmed because it violates the provisions of 11 U.S.C. § 1322(b)(1) with respect to its treatment of the Debtor's education loan debt compared to the Plan's treatment of the Debtor's remaining general unsecured debts.

B.  11 U.S.C. § 1322(b)(5) and 11 U.S.C. § 1322(b)(10).

Even if § 1322(b)(1) did not operate to impose a limitation on the separate classification and treatment of long-term debts under § 1322(b)(5), § 1322(b)(10) prohibits the Debtor's proposed treatment of his education debt.

Section 1322(b)(10) provides:

> Subject to subsections (a) and (c) of this section, the plan may . . . provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a), except that such interest may be paid only to the extent that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims[.]

11 U.S.C. § 1322(b)(10).

Section 1322(b)(10) is applicable to Debtor's treatment of his education loan under § 1322(b)(5). As stated above, § 1322(b)(10) applies to "unsecured claims that are nondischargeable under section 1328(a)." Because § 1328(a)(1) provides that any long-term debt that is provided for under § 1322(b)(5) is not discharged under § 1328(a), § 1322(b)(10) is applicable to long-term debts provided for under § 1322(b)(5). Section 523(a)(8) is also applicable to education loans and, absent a judicial finding of undue hardship, the Debtor's education loan is nondischargeable under § 523(a)(8) as well. 11 U.S.C. § 1328(a)(2).

Section 1322(b)(10) was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (Apr. 20, 2005) ("BAPCPA"). BAPCPA is singularly lacking in legislative history. *See In re Maharaj*, 681 F.3d 558, 572 (4th Cir. 2012) ("As many courts in a variety of contexts have noted, BAPCPA's legislative history is sparse.") (citing *In re Jass*, 340 B.R. 411, 416 (Bankr. D. Utah 2006); *In re*

ORDER ON CONFIRMATION OF DEBTOR'S PLAN
Case No. 12-13766 HRT

*Davis*, 348 B.R. 449, 457 (Bankr. E.D. Mich. 2006)). But, even without the aid of legislative history concerning § 1322(b)(10), its language is not ambiguous and its effect is clear.

Whenever an unsecured debt is a nondischargeable debt, § 1322(b)(10) requires that the treatment given to that nondischargeable debt cannot include the payment of interest unless the debtor's disposable income is sufficient to pay the interest after making provision for full payment of all allowed claims. As a consequence, § 1322(b)(10) has the effect of severely limiting any treatment of a nondischargeable unsecured debt in a chapter 13 plan that involves the payment of interest on the debt during the plan term. It will be an extremely rare instance where such a treatment is permitted. To a large extent, in the case of nondischargeable education loans, as well as claims that are otherwise nondischargeable, § 1322(b)(10) moots the fairness inquiry required by § 1322(b)(1).

Again, the Court is confronted with statutory provisions that are in tension with one another. Section 1322(b)(5) gives debtors the ability to cure long term debts and maintain the regular payments on those debts whether they be secured or unsecured. For all intents and purposes, § 1322(b)(10) makes it impossible to separately provide for unsecured long-term debts under § 1322(b)(5).[3] Because § 1322(b)(10) was enacted in 2005 as part of BAPCPA – long after § 1322(b)(5)'s enactment in the Bankruptcy Reform Act of 1978 – its interpretation raises different considerations. The Court must presume that Congress was fully aware of its earlier enactment and was aware of the effect that § 1322(b)(10) would have on § 1322(b)(5).

Here, the applicable canon of statutory construction is that "conflicting statutes should be interpreted so as to give effect to each but to allow a later enacted, more specific statute to amend an earlier, more general statute . . . ." *Padilla-Caldera v. Gonzalez*, 453 F.3d 1237, 1241-42 (10th Cir. 2005) (quoting *Smith v. Robinson*, 468 U.S. 992, 1024 (1984)). Certainly, § 1322(b)(10) is the later and more specific of the two provisions. The provisions of § 1322(b)(10) are narrowly focused on payment of interest on nondischargeable unsecured claims. By contrast, § 1322(b)(5) applies to all long term debts, whether secured or unsecured. As a consequence, to the extent that § 1322(b)(10) restricts a debtor's ability to utilize the cure and maintain provisions of § 1322(b)(5) with respect to nondischargeable long-term unsecured debt, the Court must give effect to the provisions of § 1322(b)(10).

---

[3] Where the restriction stated in § 1322(b)(10) is applied to separate classification of long term debts under § 1322(b)(5), by its terms, its application is not restricted to debts that are generally excluded from a chapter 13 discharge such as restitution debts, debts that are nondischargeable under various sections of § 523(a), and trust fund tax debts under § 507(a)(8)(C). *See* 11 U.S.C. §§ 1328(a)(2), (3), & (4). Debts that would otherwise be discharged in chapter 13 necessarily become nondischargeable when they are provided for under § 1322(b)(5). *See* 11 U.S.C. § 1328(a)(1).

ORDER ON CONFIRMATION OF DEBTOR'S PLAN
Case No. 12-13766 HRT

The treatment that the Debtor proposes for the education loans is to make the regular monthly payments on those debts outside of his Plan. But, as is typical, the regular monthly payment includes an interest component. The loan documentation for each of the four education loans includes the following standard language: "Payments made by me or on my behalf will be applied first to late charges and collection costs that are due, then to interest that has not been paid, and finally to the principal amount of the loan . . .." The creditor's proof of claim reflects no fees due on any of the Debtor's education loans – only principal and interest. Therefore, the Debtor's direct payments would be applied first to pay all of the accrued monthly interest with the remaining payment being applied to principal. Since the Debtor's Plan does not make provision for full payment of all allowed claims, his proposed treatment of his education loans violates the express provisions of § 1322(b)(10).

In the case of *In re Webb*, 370 B.R. 418 (Bankr. N.D. Ga. 2007), the court allowed a § 1322(b)(5) long-term debt treatment for a student loan that included interest payments where the debtor's plan did not make provision for full payment of all allowed claims. The court followed an unpublished opinion in *In re Freeman*, Case No. 06-10651-WHD (Bankr. N.D. Ga., December 22, 2006). It quoted *Freeman* as follows:

> Congress intended to permit the cure and maintenance of long-term unsecured debts, notwithstanding the applicability of section 1322(b)(10) . . .. [P]rohibiting the payment of interest on nondischargeable debts would make the cure and maintenance of any long-term debt impermissible. Such a result would be absurd and could not have been intended by Congress.

*Webb*, 370 B.R. at 422.

With only the narrowest of exceptions Congress' enactment of § 1322(b)(10) as part of BAPCPA has deprived debtors of the ability to cure and maintain payments under § 1322(b)(5) on unsecured debt.[4] But the Court has no reason to believe that is not the result Congress intended.[5] Section 1322(b)(10) makes it extremely difficult to provide a treatment for a

---

[4] At hearing, Debtor's counsel suggested that the effect of § 1322(b)(10) could be avoided by providing that payments made to the education loan creditor may be credited only to principal and not to interest. That issue is not presently before the Court, however, "maintenance" of payments under § 1322(b)(5) connotes payments under the existing loan documents as opposed to the kind of loan restructuring suggested by counsel.

[5] That is not to say Congress fully intended all of the consequences of its efforts to deal with education loans in bankruptcy. This case highlights a troubling aspect of those consequences. It appears that the Debtor is not in default on his education loan debts and he

(continued...)

ORDER ON CONFIRMATION OF DEBTOR'S PLAN
Case No. 12-13766 HRT

nondischargeable unsecured claim that is any different from other unsecured claims. The Court cannot find it unreasonable or absurd for Congress to adopt a provision that, in the vast majority of cases, requires parity of treatment between nondischargeable unsecured debts and dischargeable unsecured debts. The policy that finds expression in § 1322(b)(10) – at least with respect to education loan debt – seems also to have been expressed in the BAPCPA revisions to § 1328(a)(2), which significantly added to the types of debts that may be found to be nondischargeable in chapter 13. *See In re Waag*, 418 B.R. 373, 377 (B.A.P. 9th Cir. 2009) ("In 2005, acting to restrict the 'superdischarge' of chapter 13, Congress expanded the list of nondischargeable debts in section 1328(a)(2) . . .."). Also, as part of BAPCPA, Congress amended § 523(a)(8) to expand the scope of education related loan obligations that are nondischargeable under that subsection. 11 U.S.C. § 523(a)(8)(B).

### III. CONCLUSION

There is no question that chapter 13 debtors who owe nondischargeable student loan debts will often find their options very unattractive. In order to have an opportunity to restructure their affairs under chapter 13, those debtors will have to treat student loan debts the same as other general unsecured debts. Frequently that means substantial interest will continue to accrue on the student loan debt during the life of the debtor's plan. That will often reduce or, in some cases, wholly negate the other advantages to be obtained by reorganizing under chapter 13. This result is regrettable but does not give the Court license to engage in a judicial rewriting of the applicable provisions of the Bankruptcy Code. Therefore, it is

**ORDERED** that Confirmation of Debtor's *Chapter 13 Plan* dated March 2, 2012 (docket #2) is DENIED. It is further

**ORDERED** that Debtor shall file, on or before July 20, 2012, an Amended Chapter 13 Plan together with a Notice conforming to L.B.F. 3015-1.7 that establishes an objection deadline of August 3, 2012. The Plan and Notice shall be mailed to the Chapter 13 Trustee and those creditors/parties in interest adversely affected by the amendments. It is further

---

[5](...continued)
clearly desires to keep those obligations current. The effect of § 1322(b)(10) will be to force the Debtor to either abandon his efforts to reorganize under chapter 13 or to stay in his chapter 13 case and go into default on his education loans during the term of his chapter 13 bankruptcy plan. Over the course of a 36 month plan, by the Court's rough calculations, the Debtor would accrue over $5,000.00 of new interest on the education loans. Upon completion of his chapter 13 case, when the automatic stay terminates, the Debtor would be in default and subject to all of the administrative collection processes available to student loan creditors. *See, e.g.*, 20 U.S.C. § 1095a.

ORDER ON CONFIRMATION OF DEBTOR'S PLAN
Case No. 12-13766 HRT

  **ORDERED** that Counsel shall file the appropriate Verification of Confirmable Plan or Certificate and Motion to Determine Notice in accordance with L.B.R. 3015-1 by August 11, 2012.

  Dated this  6th  day of July, 2012.

              **BY THE COURT:**

              *Howard Tallman*
              Howard R. Tallman, Chief Judge
              United States Bankruptcy Court